IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LINDA WALTON, §
§
Plaintiff, §
§
v. §          No.  3:11-cv-1044-BN
§
CAROLYN W. COLVIN, §
Acting Commissioner of Social Security, §
§
Defendant. §

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda Walton seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed and remanded.

### Background

Plaintiff alleges that she is disabled as a result of bipolar disorder and depression. *See* Administrative Record [Dkt. No. 15 at 204]. After her application for disability and supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *See id.* at 3-5, 12-23. That hearing was held on March 23, 2009. *See id.* at 24-70. At the time of the hearing, Plaintiff was 44 years old. *See id.* at 278. She is a high school graduate and has past work experience as a security guard. *See id.* at 57, 278. Plaintiff has not engaged in substantial gainful activity since February 2, 2006. *See id.* at 17.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from bipolar II disorder and polysubstance abuse in remission, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform her past relevant work as a security guard. *See id.* at 15-23.

Plaintiff appealed that decision to the Appeals Council. *See id.* at 10-11. The Council affirmed. *See id.* at 3-5.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on four general grounds: (1) the ALJ improperly evaluated her treating physician's opinion; (2) the assessment of her residual functional capacity is not supported by substantial evidence; (3) the ALJ failed to consider whether Plaintiff could obtain and maintain employment; and (4) the ALJ failed to conduct a meaningful assessment of the demands of Plaintiff's past relevant work.

The Court determines that the hearing decision must be reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper

legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work

activities. This determination must be made solely on the basis of the medical evidence.

3.      The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.      If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.      If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See 20 C.F.R. § 404.1520(b)-(f); Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. Audler, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is

conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *Audler*, 501 F.3d at 448.

## Analysis

Among the arguments Plaintiff makes is a single ground that compels remand – the ALJ failed to apply the correct legal standard in assessing the weight to be given

to the opinion of Plaintiff's treating physician, and the failure to do so affected Plaintiff's substantial rights.[1]

Plaintiff contends that the ALJ failed to properly evaluate her treating physician's opinion. Judith Hunter, M.D. completed a Medical Assessment of Ability to do Work-Related Activities (Mental). *See* Administrative Record [Dkt. No. 15] at 565-67. In the decision, the ALJ found that Dr. Hunter's opinion was not entitled to controlling weight because it was not supported by substantial evidence in the record, Dr. Hunter had not treated Plaintiff, her opinion was obtained through attorney request and in connection with an effort to generate evidence for her social security appeal, and she was presumably paid for her report. *See id.* at 19, 22. Plaintiff alleges that the ALJ misstated the facts concerning Dr. Hunter's opinion, relied on facts not in evidence, and did not perform the mandatory evaluation required of the ALJ by 20 C.F.R. § 404.1527. *See* Dkt. No. 24-1 at 3-5.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez v.*

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

*Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

Section 404.1527(d)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Newton*, 209 F.3d at 456. Specifically, the ALJ must consider: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. 20 C.F.R. § 404.1527(d)(2); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(d)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. *See* 20 C.F.R. § 404.1527(d) ("Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998).

Plaintiff was treated for bipolar disorder at Dallas Metrocare Services from July 25, 2005 to January 29, 2009. *See* Administrative Record [Dkt. No. 15] at 270-577. Throughout Plaintiff's course of treatment at Dallas Metrocare, Dr. Hunter is shown as her attending psychiatrist, and Dr. Hunter personally treated Plaintiff on at least

eight occasions. *See id.* at 277-79, 286-88, 292-300, 303, 540-43, 554-62. On August 30, 2005, Dr. Hunter conducted a psychiatric diagnostic interview exam with Plaintiff. *See id.* at 277-79.

On March 11, 2006, Dr. Hunter completed a Medical Assessment of Ability to do Work-Related Activities (Mental). *See id.* at 565-67. Dr. Hunter opined that Plaintiff had some loss of ability to apply commonsense understanding to carry out simple one- or two-step instructions or detailed but uninvolved written or oral instructions, act appropriately with the general public, or maintain personal appearance. Dr. Hunter opined that Plaintiff had substantial loss of ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances, maintain attention/stay on task for an extended period of two hours, make simple work-related decisions, ask simple questions or request assistance, or get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. Dr. Hunter opined that Plaintiff had extreme loss of ability to maintain concentration for an extended period of two hours, perform at a consistent pace without an unreasonable number and length of rest periods/breaks, behave in an emotionally stable manner, respond appropriately to changes in a routine work setting, cope with normal work stresses including those inherit in low stress jobs, and finish a normal work week without interruption from psychologically-based symptoms. Dr. Hunter diagnosed Plaintiff with schizoaffective disorder, cocaine dependence, and alcohol abuse. Dr. Hunter also listed the following clinical signs of mental illness that Plaintiff had manifested during treatment at Dallas Metrocare: crying spells, anhedonia, sleep

disturbance, low energy, chronic disturbance of mood, retardation, difficulty thinking/confusion, chronic depression, and hallucinations/delusions. Dr. Hunter stated that Plaintiff's impairments would cause her to be absent from work more than four days a month. *See id.*

Dr. Hunter made a hand-written notation by her signature on the opinion: "Patient not interviewed by me; record reviewed." *Id.* at 567. That document, which contained hand-written notations, was converted to typewritten form that was signed by Dr. Hunter on April 8, 2009. *See id.* at 570-72. Again, Dr. Hunter made a handwritten notation: "This patient not seen be me. This record reviewed." *Id.* at 572. Both forms of the opinion were also signed by physician assistant Sapril Nguyen. *See id.* at 567, 572. On the March 11 hand-written version, the physician assistant also made a notation: "Patient not interviewed by me." *Id.* at 567.

During the administrative hearing, the ALJ commented on the notations indicating that Dr. Hunter had not interviewed Plaintiff in connection with opinion. *See id.* at 27, 58. Plaintiff's attorney explained that Dr. Hunter had treated Plaintiff for years but did not interview her at the time of the assessment. *See id.* at 27. The ALJ characterized the opinion as that of the physician assistant, which was "reviewed" and co-signed by Dr. Hunter. *See id.* at 58.

In the decision, the ALJ summarizes Dr. Hunter's opinion. *See id.* at 18. In a separate paragraph, the ALJ explains her reasons for affording it little weight: "The opinion of the doctor and/or physician assistant who reviewed the record ... is without substantial support from the other evidence or record, which obviously renders it less

9

persuasive. It appears that the claimant was not treated by Dr. Hunter and the opinion was obtained through attorney request and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored." *Id.* at 22. Although at times the ALJ's decision refers to a "treating physician," *see, e.g.*, *id.* at 20, the ALJ's decision also repeatedly refers to Dr. Hunter as a "reviewer," *see id.* at 18, 22.

"The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455. And the Commissioner does not even argue that Dr. Hunter is not a "treating physician" for these purposes, suggesting only at one point that "[a] physician who has a history of only intermittent, infrequent treatment <u>arguably</u> lacks the detailed, longitudinal perspective of Plaintiff's impairment that would qualify him as a 'treating physician.'" Dkt. No. 26 at 6 (citing 20 C.F.R. § 416.1527(d)(2)). The Commissioner then half-heartedly notes the ALJ's erroneous finding that Dr. Hunter may have only "review[ed] the record." *Id.*

The ALJ's decision demonstrates that the ALJ failed to consider all six of the Section 404.1527(d)(2) factors in determining the weight to give Dr. Hunter's opinion. The only factor the ALJ mentions explicitly is whether there is "substantial support from the other evidence of record," *id.* at 19, 22, as to which the ALJ finds support in the agreement of Dr. Beth Maxwell, Ph.D., *see id.* at 19, a testifying medical expert who neither examined nor treated Plaintiff and whose testimony therefore cannot

10

provide support for a decision to reject Plaintiff's treating physician's opinion without explicitly considering all the required factors, *see Newton*, 209 F.3d at 453 ("The Court concludes that, absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).") (emphasis in original).

The ALJ's decision includes no explicit mention of the other five factors that the ALJ was required to consider. The Commissioner's brief attempts to conduct the analysis of at least some of these factors, but this discussion's presence in the brief only serves to highlight its absence from the ALJ's decision. *Compare* Administrative Record [Dkt. No. 15] at 19, 22, *with* Dkt. No. 26 at 6. Furthermore, the ALJ's statement that Dr. Hunter did not treat Plaintiff is contrary to the evidence, and there is nothing in the record to support the ALJ's statements that Plaintiff's attorney asked Dr. Hunter to make the assessment, that Dr. Hunter did the assessment to generate evidence for Plaintiff's social security appeal, or that she was paid for it.

Therefore, because the ALJ failed to consider all six factors, the ALJ applied the incorrect legal standard in weighing the medical opinion of Plaintiff's treating physician, Dr. Hunter. Because the Court finds that the ALJ erred, it must now determine whether that error affected Plaintiff's substantial rights. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) ("Procedural perfection in administrative

proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").

If the ALJ had actually considered the importance of the examining and treatment relationships of Dr. Hunter to Plaintiff, the ALJ might have been more reluctant to give Dr. Hunter's opinion little weight. Even though Plaintiff was seen by different psychiatrists and physician assistants at Dallas Metrocare, Dr. Hunter was her attending physician from the time of her first visit and throughout the four years that Plaintiff was treated there. Dr. Hunter personally treated Plaintiff on at least eight occasions and personally interviewed Plaintiff for a psychiatric diagnostic exam. In the decision, the ALJ focused on the fact that Dr. Hunter did not interview Plaintiff before she rendered her medical opinion. The ALJ failed to consider that Dr. Hunter's opinion was based upon her own treatment of Plaintiff, in addition to the records of all of the health care providers who treated Plaintiff at Dallas Metrocare. Such additional considerations might have led to a different decision because giving greater weight to Dr. Hunter's opinion might have ultimately affected the ALJ's disability determination.

For example, at Step 3 of the sequential evaluation of disability, the ALJ found that Plaintiff's bipolar II disorder and polysubstance abuse in remission were severe impairments that did not, either singly or in combination with each other, meet or equal the criteria of any of the listed impairments in the Appendix. *See* Administrative Record [Dkt. No. 15] at 19. The ALJ found that Plaintiff had moderate restrictions in the activities of daily living and social functioning, mild difficulties with regard to concentration, persistence, or pace and had experienced no episodes of decompensation.

*See id.* at 20. These restrictions are much less severe than the ALJ might have found if the ALJ had given Dr. Hunter's opinion greater, if not controlling, weight. In another example, the consultant examiner, whose opinion the ALJ gave greater weight than Dr. Hunter's, testified that someone who missed work two times per month for psychiatric reasons would not be able to sustain employment. *See id.* at 22, 70. Dr. Hunter concluded that Plaintiff would miss work more than four days per month as a result of her mental impairments. *See id.* at 567. In the RFC determination, the ALJ determined that Plaintiff could return to her past relevant work as a security job. *See id.* at 22. Again, had the ALJ given Dr. Hunter's opinion greater weight, the RFC determination might have been different.

The Court holds that Plaintiff's substantial rights were affected by the ALJ's failure to consider the required specific factors to assess the weight given to the opinion of Plaintiff's treating physician Dr. Hunter. The ALJ might have reached a different result but for the legal error. *See Ervin v. Comm'r of Soc. Sec. Admin.,* No. 3:11-CV-442-O-BF, 2012 WL 1835735, at * 7-*8 (N.D. Tex. April 24, 2012).

Because Plaintiff is entitled to remand based on this error, it is not necessary to address Plaintiff's remaining points of error other than to note that, as discussed above, the ALJ's determination as to each of the other matters on which Plaintiff alleges error may be substantially affected if, on remand, the ALJ gives Dr. Hunter's opinion greater, if not controlling, weight.

**Conclusion**

The hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further administrative proceedings. On remand, the Commissioner should begin the disability analysis at step three of the sequential five-step disability inquiry.

DATED: April 25, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

14